FRANK E. BEERS *vs.* JOHN E. O'BRIEN.

Middlesex.    November 5, 1943. — June 26, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & RONAN, JJ.

*Evidence*, Relevancy and materiality, Admissions. *Res Judicata*. *Practice, Civil*, Exceptions: whether error harmful, general exception; Charge to jury. *Error*, Whether error harmful.

A party, who on cross-examination of a witness brought out conduct of the witness tending to injure his credit with the jury, was not prejudiced by the showing on redirect examination of extenuating circumstances for such conduct even though the manner in which they were shown may have been irregular.

If a husband seeking a divorce on the ground of adultery voluntarily caused his libel to be dismissed, the decree of dismissal could be shown, in an action by him for criminal conversation against the corespondent named in the libel, as an admission of the weakness of the plaintiff's case.

A decree of dismissal after a hearing of a libel by a husband for divorce on the ground of adultery with a named corespondent who appeared to contest the libel would be conclusive on the issue of adultery, and was therefore admissible as evidence for the defendant in an action by the husband against the alleged corespondent for criminal conversation.

No error prejudicial to an excepting party was shown in the admission of evidence which merely confirmed the plain inference to be drawn from that party's own testimony.

A "general exception to the charge, to every word of it," and an "individual exception to every separate sentence of the charge" were worthless.

No violation of G. L. (Ter. Ed.) c. 231, § 81, was shown by a charge in which the judge drew the jury's attention to the story told by the plaintiff in his testimony and asked them what inferences they would draw therefrom, without saying anything which would have any greater tendency to persuade the jury in favor of the defendant than would such testimony.

TORT. Writ in the Superior Court dated June 10th, 1940. The action was tried before *Morton,* J.

*C. S. Murphy,* for the plaintiff.

*A. S. Allen,* for the defendant.

LUMMUS, J. In this action, brought on June 10, 1940, the plaintiff seeks damages for alleged criminal conversation with the plaintiff's wife in 1939 and 1940, when the plaintiff and his wife were living together in Townsend and the defendant was a frequent visitor at the house to the full knowledge of the plaintiff and without objection by him. On September 27, 1940, a divorce nisi was decreed between the plaintiff and his wife, and that became absolute on March 27, 1941. A jury returned a verdict for the defendant. The case is here on exceptions taken by the plaintiff.

1. The plaintiff's former wife, called as a witness by the defendant, testified for the latter, to what effect the record does not state. On cross-examination, she testified that in May, 1940, shortly after the plaintiff left her, she wrote the plaintiff a letter in which she said in substance that she was pregnant, that her condition was his "responsibility" and not that of any other man, that she had engaged a physician

in Rhode Island to perform an abortion, that she needed money to pay him, and that she expected the plaintiff to furnish the money, as that was the last favor she would ever ask from him.

On redirect examination by counsel for the defendant, she testified without objection that before writing that letter she consulted a physician in Townsend, and told him of her pregnant condition and of her experiences in her last two childbirths. Then, over the exception of the plaintiff, she was permitted to testify that she told that physician in substance that her previous pregnancies had injured her seriously, that she feared that she could not survive another childbirth, that she wished to live to care for the children she already had, and that she was not financially able to have another child.

There was no prejudicial error in the admission of that testimony. The plaintiff by his cross-examination had brought out that the witness wished to have an abortion performed, that a physician in Rhode Island had "treated her," and that no child had been born to her. Those facts might seriously injure her credit with the jury. The defendant might properly be allowed to palliate her conduct by showing extenuating circumstances. She could have been asked directly about her reasons for writing the letter, and could have testified to the same reasons that were stated by her to the Townsend physician. Though it may have been irregular to permit her to relate her conversation with that physician, the facts stated by her in that conversation were admissible. The plaintiff was not harmed by the form in which those facts appeared. G. L. (Ter. Ed.) c. 231, § 132.

2. The defendant, over the exception of the plaintiff, introduced the record of a libel for divorce brought by the plaintiff against his wife on June 11, 1940, on the grounds of cruel and abusive treatment and adultery with the defendant, and also the record of another libel for divorce brought against the plaintiff by his wife on September 27, 1940, on the ground of cruel and abusive treatment.

The records showed that the libel of the plaintiff was dismissed on September 27, 1940, while on that day a decree

nisi for divorce was granted to his wife on her libel, with custody of three minor children and an order for their support.

The plaintiff had already testified without objection to the dates, nature, and contents of these libels. He testified further that he and his wife were finally divorced in March, 1941. The records showed that the defendant was named as corespondent in the libel brought by the plaintiff, that he and the libellee appeared to contest that libel, and that that libel was dismissed.

In the charge the judge stated in substance that the plaintiff testified that his libel against his wife was not heard in court. We must accept that statement by the judge as true. *Botkin* v. *Miller*, 190 Mass. 411, 415. *George N. Pierce Co.* v. *Casler*, 194 Mass. 423, 428. *Flaherty* v. *Boston & Northern Street Railway*, 210 Mass. 321, 324. If the plaintiff voluntarily caused his libel to be dismissed, the decree of dismissal could be shown as an admission by the plaintiff that the evidence to support the accusation of adultery then and now made by him was not strong enough to present to a court.

On the other hand, if his libel was dismissed after a hearing, the record of the decree of dismissal was competent evidence for a different reason. Under G. L. (Ter. Ed.) c. 208, § 9, the defendant had a right to "appear and contest the charge of adultery therein [i.e. in the libel] made against him." If he had not exercised that right, but had remained inactive, any decree made in his absence in the proceeding between the plaintiff and his wife would not have been conclusive or even admissible in this action. *Stricker* v. *Scott*, 283 Mass. 12. *Silva* v. *Silva*, 297 Mass. 217. *Blackman* v. *Coffin*, 300 Mass. 432, 436, 437. *Morrissey* v. *Powell*, 304 Mass. 268, 269. *Hendrick* v. *Biggar*, 209 N. Y. 440. But the defendant did appear and contest, and became at least a quasi-party as far as the charge of adultery was concerned. True, no affirmative relief could be given him, but that is a common situation for a defendant. A successful contest could result only in a dismissal of so much of the libel as charged adultery. But on that issue of adultery the defend-

ant and the plaintiff were adversaries.  We see no reason why the decree should not be conclusive upon that issue in a subsequent controversy between them.  The decree therefore was admissible upon the alternative hypothesis that the libel was dismissed after a hearing.

Our conclusion in this respect is supported by *Hendrick* v. *Biggar*, 209 N. Y. 440, which arose under a statute, enacted in 1899, substantially like our statute.  See also *Billings* v. *Billings*, 73 App. Div. (N. Y.) 69; *Boller* v. *Boller*, 111 App. Div. (N. Y.) 240; *Tellegen* v. *Tellegen*, 205 App. Div. (N. Y.) 241; *Kelly* v. *Kelly*, 259 App. Div. (N. Y.) 598.

The admission in evidence of the decree granting a divorce to the plaintiff's wife upon her libel, was not prejudicial error.  The plaintiff had already testified to the nature and contents of that libel, and had admitted that he and his wife had been finally divorced in March, 1941.  The record of his own libel, already held admissible, showed that his own libel was dismissed.  The inference was plain that the divorce was granted on the libel brought by his wife.  The decree upon that libel only verified that plain inference, and added nothing to what the jury already knew.  Obviously any possible error in admitting that decree in evidence was not one that "injuriously affected the substantial rights of the parties."  G. L. (Ter. Ed.) c. 231, § 132.

3. The remaining exceptions were to the charge.  Of course the "general exception to the charge, to every word of it," and the "individual exception to every separate sentence of the charge," are worthless.  *Barker* v. *Loring*, 177 Mass. 389, 391.  *Savage* v. *Marlborough Street Railway*, 186 Mass. 203, 204.  *Callahan* v. *Fleischman Co.* 262 Mass. 437.  *Mansell* v. *Larsen*, 311 Mass. 607, 613, 614.  *Commonwealth* v. *Venuti*, 315 Mass. 255, 259–260.

The plaintiff's principal contention in support of his more specific exceptions, which need not be recited, is that the charge violated G. L. (Ter. Ed.) c. 231, § 81, purporting to prohibit courts from charging juries with respect to matters of fact.  We assume without deciding that that section is constitutional.  But we think the judge did not violate it.

The testimony given by the plaintiff was such as to cast

grave doubt upon his credibility and his case. The following is in substance his story. In March, 1940, he knew from personal observations on five or six occasions that his wife and the defendant were committing adultery in his house. On March 21, 1940, he saw them in the act. He knew, too, that his daughter, aged twelve, acted as a lookout for them to make the adultery safe from detection. Yet he never spoke to his wife about her conduct until early in April; he never spoke to his daughter about the matter at all; and he never spoke to the defendant about it, although he saw him and talked with him often, in the house as well as elsewhere. He never made any complaint to any court. He occupied the same bedroom with his wife until he left her. Shortly after he left her, his wife asked him why he left. Although he was convinced of her adultery, he gave as his only reason his belief that he was being poisoned, and did not mention adultery in any way. Indeed, he testified that he did not leave her because of any adultery.

In our opinion, the judge in his charge did little more than call the foregoing conceded facts to the attention of the jury, and ask them what inferences they drew from those facts. Nothing the judge said was more persuasive in favor of a verdict for the defendant than was the plaintiff's own testimony. We think the judge did not go beyond his rights. *Whitney* v. *Wellesley & Boston Street Railway*, 197 Mass. 495. *Federal National Bank* v. *O'Keefe*, 267 Mass. 75, 82, 83. *Hohman* v. *Hemmen*, 280 Mass. 526. *Ristuccia* v. *Boston Elevated Railway*, 283 Mass. 529. *Commonwealth* v. *Green*, 302 Mass. 547, 555, 556. *Langan* v. *Pianowski*, 307 Mass. 149, 152.

*Exceptions overruled.*