Robert J. PETTEY, Plaintiff–Appellant,

v.

Christina L. BELANGER, Melissa N. Belanger, By Their Father and Next Friend, William BELANGER, Defendants–Appellees.

Nos. Civ.A. 98–11683–DPW.

United States District Court, D. Massachusetts.

April 22, 1999.

---

Joseph J. Czerwonka, Fall River, MA, for appellant.

Mark F. Itzkowitz, Boston, MA, for appellees.

### MEMORANDUM AND ORDER

WOODLOCK, District Judge.

This is an appeal from a decision of the United States Bankruptcy Court in which the Court found that appellant Robert J. Pettey owes appellees a $750,000 debt, and that this debt was excepted from discharge under 11 U.S.C. § 523(a)(6) as a debt for willful and malicious injury. Pettey appeals on two grounds. First, he argues that the Court erred in finding that he caused willful and malicious injury to the appellees as defined by 11 U.S.C. § 523(a)(6). Second, he argues that even

if the debt is not dischargeable, he does not owe the full $750,000.

Appellees urge affirmance of the Bankruptcy Court's decision. They also move that the Court impose sanctions against Pettey for filing a frivolous appeal and refer the case to the Department of Justice for criminal proceedings.

## I. BACKGROUND

The following facts are not disputed in this appeal:

Appellees Christina Belanger and Melissa Belanger are Pettey's nieces by marriage. During 1990, when they were aged eleven and thirteen years respectively, appellees lived with Pettey and their aunt, Pettey's then wife. During that period, Pettey sexually abused the appellees. The sexual abuse caused both girls to suffer post-traumatic stress disorder, which consists of an array of emotional and behavioral symptoms and injuries.

Pettey was charged with, and on October 4, 1994, pled guilty to, six indictments with respect to the abuse. Those indictments consisted of three charging rape of a child by the use of force or threat of bodily injury [1] and three charging indecent assault and battery on a child under the age of fourteen years.[2]

At the time of Pettey's sentencing, appellees were pursuing a civil action against him. They [3] commenced the action in 1991 for assault and battery upon each of them. On January 20, 1995 Pettey, through counsel, executed an agreement for judgment in the civil action in the amount of $750,000.00. Judgment was entered for that amount shortly afterwards.

The agreement for judgment was part of a plea agreement with Pettey, to which appellees, through their father, were parties. Pursuant to that agreement, which the Court accepted, Pettey was sentenced on two indictments charging rape to thirty consecutive years in prison, with all but 18 months of that sentence suspended, and ten years' probation.[4] The other four indictments were placed on file. Pettey was also obliged pursuant to the plea agreement to execute the agreement for judgment in the civil action.

Pettey did not pay, and has not paid, any part of the judgment. Appellees commenced a second civil action in an attempt to reach and apply stocks held by Pettey in two privately held corporations. A judgment was entered in appellees' favor in that matter and Pettey appealed the judgment. In the meantime, on October 24, 1996 Pettey filed a petition under Chapter 13 of the Bankruptcy Code. His case was later converted to one under Chapter 11 and then Chapter 7 of the Code. The petition stayed his appeal in the second civil proceeding.

On June 2, 1997, appellees filed with the Bankruptcy Court the adversary proceeding from which this appeal arises. Pettey was the only person who gave evidence at the trial. Appellees introduced into evidence the judgment agreement, medical records and an expert report of Dr. Ann Burgess dated December 24, 1991. In the report Dr. Burgess states that both appellees "are suffering Post–Traumatic Stress Disorder, DSM IIIR 309.89 in which childhood sexual abuse is the behavioral stressor."

In a thoughtful and detailed opinion issued on June 19, 1998, Judge Kenner ruled that because appellees had proved that Pettey had caused willful and malicious injuries to them, the original judgment debt at issue was not dischargeable in bankruptcy. Judge Kenner also found the entire $750,000 to be a "debt for" the

---

1. In violation of Mass.Gen.Laws. ch. 265 § 22A.

2. In violation of Mass.Gen.Laws. ch. 265 § 13B.

3. By their father and next friend William Belanger.

4. Pettey has served the 18 months in prison and is currently on probation.

injury and accordingly was excepted from discharge.

## II. STANDARD OF REVIEW

■ A district court's standard of review when deciding an appeal from a bankruptcy court is governed by Fed. R.Bankr.P. 8013. The rule provides that the court "may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." While a district court must review conclusions of law *de novo, In re First Software Corp.,* 97 B.R. 711, 713 (D.Mass.1988), "[f]indings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R.Bankr.P. 8013.

## III. DID THE SEXUAL ASSAULTS AND BATTERIES INVOLVE WILLFUL AND MALICIOUS INJURY?

■ 11 U.S.C. § 523 lists the types of debts which are not dischargeable in bankruptcy. Under that section,

(a) a discharge . . . does not discharge an individual debtor from any debt—

. . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

Pettey does not deny that acts which constitute rape and indecent assault and battery on a child under fourteen are willful and malicious acts. Rather, he contends that the "injury" alleged by appellees was not done willfully, maliciously or intentionally by him. Pettey says that the only evidence as to appellees' injuries was the report by Dr. Burgess indicating that both children suffered post traumatic stress disorder, in which childhood sexual abuse was the behavioral stressor. No evidence as to physical injuries was introduced. Further, Pettey contends that there is no evidence on the record that he

intended to injure appellees by causing them emotional upset and psychological injuries. He argues that "it appears that the only conclusion one can draw from the acts that were described in this case is that the actor intends to gratify some sexual or psychological needs of himself."

In *Kawaauhau v. Geiger,* 523 U.S. 57, ——, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998) the Supreme Court considered the following question: "Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury . . ., or only acts done with the actual intent to cause injury . . .?" (Footnote omitted.) In that case, plaintiff sought to deny the discharge of a debt arising from a malpractice suit against her doctor. The Court concluded that the section only covers acts done with the actual intent to cause injury:

[t]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

*Id.,* at ——, 118 S.Ct. at 977. Accordingly, the Court concluded that a debt for malpractice was not excepted from discharge because it was based on negligent or reckless conduct.

By contrast, Pettey's sexual assault and battery falls squarely within the exception contained in § 523(a)(6). It is a classic example of intentional tort. Pettey strives

to draw a distinction between his conduct and intentional torts such as theft. In the latter case, he argues, the thief intends to take the money of the victim, whereas here, he did not intend to cause the victims psychological injury or emotional distress.

The distinction is specious. Where intentional torts involving the person are concerned, the act of committing the tort in itself is an injury to the victim. Liability for battery arises if a person acts intending to cause a harmful or offensive contact and an offensive contact results. *Restatement (Second) of Torts*, § 18 (1964)[5]. A bodily contact is offensive if it offends a reasonable sense of personal dignity. *Id.*, § 19. Contact offends a reasonable sense of personal dignity if it is unwarranted by the social usages at the time and place at which it is inflicted. *Id.*, § 19 comment a. There is no doubt that sexual assault of children is unwarranted by social usages.

As a consequence, proof that Pettey committed sexual assault and battery in itself provides proof that he intended to injure appellees. Whether he also did so in pursuit of his own sexual gratification is irrelevant. Proof of willful and intentional injury is provided by the fact that Pettey knowingly and voluntarily pled guilty to the indictments charging intentional crimes to the person of his victims.

■ I reject Pettey's argument that the only evidence of appellees' injury was provided by the report by Dr. Burgess. The evidence of injury is provided by proof of the sexual assaults and batteries simpliciter. Proof of psychological harm, as provided in Dr. Burgess' report, is proof of *further* injury arising from the assaults.

Accordingly, I find that Pettey caused a willful and malicious injury to appellees.

## IV. WAS THE EXCEPTED DEBT LESS THAN THE $750,000 JUDGMENT?

The judgment agreement provided as follows:

Judgment shall enter against the Defendant, Robert Pettey, Sr., in the amount of Seven Hundred Fifty Thousand ($750,000.00) Dollars, Plaintiffs to divide said sum among them and to pay any legal fees therefrom. No interest or costs shall be awarded.

Pettey argues that any excepted debt should not be the full $750,000. He contends that the agreement for judgment does not specify what the $750,000 amount was designed to compensate. It only specifies that the amount does not include interest and costs but does include legal fees. Pettey maintains that only that part of the debt attributable to willful and malicious injury is non-dischargeable. He argues that if part of the debt is attributable to punitive damages, for example, it should be discharged because Massachusetts does not recognize punitive damages. In summary, Pettey contends that the Bankruptcy Court erred in using the judgment agreement as the measure of appellees' damages in this case.

Pettey made this argument at the Bankruptcy Court. Judge Kenner disposed of the argument in the following manner:

Provided that injury was both willful and malicious, as it was, the exception from discharge extends to any "debt for" the injury. . . . This includes liability for consequential damages. As the Supreme Court has recently clarified, the phrase "debt for" in § 523(a) means "debt as a result of," "debt with respect to," and "debt by reason of"; and therefore it includes not only restitutionary but also compensatory and punitive damages and attorney's fees. *Cohen v. De La Cruz*, 523 U.S. 213, ——, 118

5. A newly issued Discussion Draft for the Third Restatement reaffirms that a showing of intent, without some separate showing of harm, is a sufficient basis for liability for battery. *Restatement (Third) of Torts: General Principles* § 1, comment b (Discussion Draft, April 5, 1999).

S.Ct. 1212, 1217, 140 L.Ed.2d 341 (1998) ... [Pettey] has not suggested, much less shown, that any portion of the agreed judgment constituted payment for liability arising from anything other than [Pettey's] abuse of the [appellants]. I need not determine how much of that injury is attributable to emotional harm, as opposed to attorney's fees, punitive damages, or any other damages. Regardless of the allocation, the entire judgment debt is a result of and attributable to the willful and malicious injuries that formed the basis of [appellees'] complaints, first in the state court action and now in this one. The entire $750,000 is a "debt for" such injuries within the meaning of § 523(a)(6) and therefore is excepted from discharge.

■■■ I agree. In *Cohen*, the Court specifically refers to § 523(a)(6), among other provisions within § 523(a), and says that none of those provisions use "debt for" in the restitutionary sense. *Id.*, at ——, 118 S.Ct. at 1217. However it is put, it is clear that the $750,000 debt is "as a result of", "with respect to" and "by reason of" Pettey's sexual assault and battery of appellees. The law suit arose solely out of those acts. Accordingly I will not disturb the Bankruptcy Court's finding that the entire $750,000 is a "debt for" the injuries arising from Pettey's sexual assault and battery of appellees. The whole debt is consequently excepted from discharge.

## V. MOTION FOR SANCTIONS

■■ Appellees move that I sanction Pettey for filing a frivolous appeal, and for other sanctionable conduct. They contend that his conduct throughout the entire proceedings has demonstrated his continuing malice against appellees, from the initial rapes, through a series of court proceedings, to a judgment agreement which he never intended to pay, to the current appeal. Appellees argue that this appeal lacks good faith in law and in fact, and that Pettey "should not be permitted to continue to abuse the Belanger children by using the courts as an instrument of torment." Appellees therefore seek an award of damages and multiple costs of the appeal.[6] They also maintain that I should refer Pettey's trial testimony, admissions made by his counsel on his behalf at the pre-trial conference, and his bankruptcy schedules to the Department of Justice for review for further criminal proceedings.

Fed.R.Bank.P. 8020 provides

If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Because there is a lack of case law arising under Fed.R.Bank.P. 8020, which became effective just two years ago, and because Fed.R.App.P. 38 is in the same terms as Rule 8020, I turn to case law relating to Rule 38 for guidance.

The First Circuit has imposed sanctions under Rule 38 where "the overwhelming weight of precedent was against appellant's position, where appellant could set forth no facts to support its position, or where, in short, there simply was no legitimate basis for pursuing an appeal." *Kowalski v. Gagne*, 914 F.2d 299, 309 (1st Cir.1990).

Appellees here seek sanctions for a range of behavior spanning many years in

---

6. Appellees purport to rely upon Fed.R.App.P. 38. In bankruptcy proceedings, however, the Federal Rules of Appellate Procedure only apply to appeals to the Court of Appeals from a District Court exercising original jurisdiction in a bankruptcy case, or to appeals to a Court of Appeals from the District Court or from a Bankruptcy Appellate Panel exercising appellate jurisdiction over a Bankruptcy Court decision. Fed.R.App.P. 6. The applicable rule for appeals from the Bankruptcy Court to the District Court now is Fed. R.Bank.P. 8020, effective April 11, 1997.

many forums. Rule 38 (and by extension Rule 8020), however, is directed solely to frivolous *appeals*. As so narrowed, appellees' motion, while not without force, must ultimately fail. I cannot find that the current appeal was frivolous. To be sure, it evidences an intention by Pettey to take all possible steps to avoid paying appellees what is rightfully due to them under the judgment agreement. The arguments were fully and capably disposed of by the Bankruptcy Court. But I cannot say there was no legitimate purpose to pursue them before this Court and that they were thus frivolous under Rule 8020.

Appellees also request that I refer certain materials of record to the Department of Justice for review for further criminal proceedings. I decline to take this step while sitting on appeal. Of course, the Bankruptcy Court, which acted as finder of fact in this case, may choose independently to bring this matter to the attention of the appropriate prosecutorial authorities.

## VI. CONCLUSION

On this record, I conclude that Pettey caused willful and malicious injury to appellees, and that the debt for the injury was $750,000. The debt falls within the exception to discharge contained in 11 U.S.C. § 523(a)(6). Accordingly, the Bankruptcy Court's decision is AFFIRMED. The motion for sanctions is DENIED.